**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION AT COLUMBUS**

| | | |
|---|---|---|
| **SHARON MCKENNA**, on behalf of herself and others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>**BELLISIO FOODS, INC.**,<br>235 Water Street<br>Jackson, OH 45640<br><br>Defendant. | ) | **CASE NO. 2:26-cv-929**<br><br>**JUDGE**<br><br>**MAGISTRATE JUDGE**<br><br>**JURY DEMAND ENDORSED HEREON** |

**PLAINTIFF'S COLLECTIVE ACTION COMPLAINT FOR VIOLATIONS OF THE FAIR LABOR STANDARDS ACT**

Named Plaintiff Sharon McKenna ("Named Plaintiff"), individually and on behalf of others similarly situated, files her Collection Action Complaint against Defendant Bellisio Foods, Inc. ("Defendant") for its failure to pay its employees overtime wages, seeking all available relief under the Fair Labor Standards Act of 1938 ("FLSA"), 29 U.S.C. §§ 201, *et seq*. Named Plaintiff's FLSA claim is brought as a collective action pursuant to 29 U.S.C. § 216(b). The following allegations are based on personal knowledge of Named Plaintiff's conduct and are based on information and belief as to the acts of others. Named Plaintiff, individually and on behalf of others similarly situated, hereby states as follows:

## I. JURISDICTION AND VENUE

1. This Court has federal question jurisdiction over this action pursuant to 28 U.S.C. § 1331 for violations of the FLSA.

2. Venue is proper in this forum pursuant to 28 U.S.C. § 1391, as a substantial part of the events or omissions giving rise to these claims occurred in the Southern District of Ohio,

Defendant employed Named Plaintiff in the Southern District of Ohio, and Defendant has conducted substantial business in the Southern District of Ohio.

## II. PARTIES

### A. Named Plaintiff

3. Named Plaintiff Sharon McKenna is an individual, a United States citizen, and a resident of Ohio.

4. Named Plaintiff worked for Defendant at its facility in Jackson, Ohio as an hourly, non-exempt employee as defined in the FLSA in the positions of Utilities Worker and Sanitation Worker from approximately August 2023 to May 2026.

5. At all relevant times, Named Plaintiff primarily performed non-exempt duties for Defendant in furtherance of its business of producing and distributing food products.

6. During her employment, Named Plaintiff worked 40 or more hours in one or more workweek(s).

7. Named Plaintiff brings this action on behalf of herself and other similarly situated employees defined below, and referred to herein, as the "FLSA Collective" and/or the "FLSA Collective Members" and has given her written consent to bring this action to collect unpaid overtime compensation under the FLSA. Named Plaintiff's *Consent to Join* form is being filed along with this Complaint, pursuant to 29 U.S.C. § 216(b), and attached as **Exhibit A**.

### B. Defendant

8. Defendant is a foreign for-profit corporation registered to conduct business in Ohio.

9. Defendant operates three production facilities across the United States.[1]

---

[1] *Production & Contract Manufacturing*, BELLISIO FOODS, https://www.bellisiofoods.com/capabilities/production/ (Last visited Aug. 3, 2026).

Defendant's largest facility is located in Jackson, Ohio.[2] Defendant is in the business of manufacturing and distributing frozen meals.[3]

10. At all relevant times, Defendant has had direct or indirect control and authority over Named Plaintiff and other similarly situated employees' working conditions. At all relevant times, Defendant exercised that authority and control over Named Plaintiff and other similarly situated employees.

11. At all relevant times, Defendant has had direct or indirect control and authority over matters governing the essential terms and conditions of employment for Named Plaintiff and other similarly situated employees at all locations operated and managed by Defendant. At all relevant times, Defendant exercised that authority and control over Named Plaintiff and other similarly situated employees.

12. At all relevant times, Defendant has had the authority to hire and fire employees, supervise and control their work schedules and work conditions, determine their rate and method of pay, and/or maintain employee records.

13. Upon information and belief, Defendant applies or causes substantially the same employment policies, practices, and procedures to be applied to all employees at all of Defendant's locations, including policies, practices, and procedures relating to the payment of wages, overtime, and timekeeping.

14. At all relevant times, Defendant suffered or permitted Named Plaintiff and other similarly situated employees to work. The work that Named Plaintiff and other similarly situated employees performed was for Defendant's benefit.

---

[2] *Id.*
[3] *Id.*

15. Defendant was an "employer" of its employees at all its locations as defined herein, and/or for the purposes of the FLSA.

16. At all relevant times, Defendant, as a corporation producing food products, was an enterprise engaged in "the production of goods for commerce" within the meaning of the phrase as used in the FLSA.

17. At all relevant times, Defendant has had an annual gross volume of sales made, or business done, of not less than $500,000 each year.

18. At all relevant times, Defendant has had employees engaged in the production of goods for commerce, or employees handling, selling, or otherwise working on goods or materials that have been moved in or were produced for commerce.

19. Upon information and belief, Defendant, at all relevant times, was fully aware that it was legally required to comply with the wage and overtime laws of the United States.

## III. FACTUAL ALLEGATIONS

20. Defendant produces and distributes food products for human consumption.

21. As a result, Named Plaintiff and other similarly situated production/manufacturing employees were required to comply with Food and Drug Administration ("FDA") regulations as a component of their jobs. Donning sanitary clothing and equipment, washing their hands to maintain sanitary conditions, scrubbing footwear, and complying with FDA regulations are linked with the job duties of manufacturing and packaging food products.

22. Named Plaintiff and other similarly situated production/manufacturing employees could not perform their work duties unless they wore sanitary clothing and other protective equipment as required by law and performed necessary pre-shift sanitation steps.

23. Therefore, the donning and doffing of sanitary clothing and other protective

equipment, handwashing, boot scrubbing, and other anti-contamination steps are integral and indispensable to the work performed by Defendant's production/manufacturing employees.

24. Named Plaintiff and other similarly situated hourly production/manufacturing employees routinely arrived before the scheduled start of their shifts to complete this pre-shift work.

25. Before the scheduled start of their shifts, Named Plaintiff and other similarly situated hourly production/manufacturing employees donned sanitary clothing and equipment such as outer clothing (such as a shirt and pants or a smock), hair nets, beard nets, glasses, shoes, and gloves that were maintained at the facility.

26. Changing into sanitary clothing and equipment is the employees' first principal activity of the workday, and changing out of this clothing and equipment at the end of their shift is their last principal activity.

27. After donning their sanitary clothing and equipment, Named Plaintiff and other similarly situated production/manufacturing employees were permitted to clock in up to seven minutes before the scheduled start of their shift—the earliest time Defendant's policies allowed for.

28. After clocking in, Named Plaintiff and other similarly situated production/manufacturing employees were required to complete additional sanitation steps, including sanitizing their footwear and washing their hands at a designated handwashing station. After washing and drying their hands, Named Plaintiff and other similarly situated hourly production/manufacturing employees entered the production floor.

29. The time Named Plaintiff and other similarly situated production/manufacturing employees spent completing the required sanitation procedures prior to their shifts was

compensable as it occurred after their first principal activity, and was itself integral and indispensable to their job duties of food production.

30. However, Defendant's time-rounding policies/practices resulted in a failure to compensate Named Plaintiff and other similarly situated production/manufacturing employees for this pre-shift work.

31. Defendant uses/used a timekeeping system that records/recorded its hourly employees' exact clock-in and clock-out times.

32. Defendant maintains a time-rounding policy or practice that does not compensate employees for their time spent performing work before the scheduled start and after the scheduled end of their shifts. Instead, Defendant's policy generally results in Named Plaintiff's and other similarly situated production/manufacturing employees' time being rounded to the scheduled shift start and end times.

33. More specifically, Defendant has a 15-minute rounding policy which rounds its employees' punch times to the nearest quarter hour. In addition to this rounding system, Defendant prohibits its production/manufacturing employees from clocking in earlier than seven minutes before the start of their scheduled shift or later than seven minutes after the end of their scheduled shift. Employees who clock in or clock out inconsistently with Defendant's time-rounding policy or practice would have the pay for such work time retracted and would further be subject to a "Job Performance write-up" for each instance.

34. By restricting their employees to clocking in and out within seven minutes of the scheduled start and end of their shifts, Defendant ensures that its employees generally only get paid for their scheduled shift and not for any pre or post-shift work.

35. Defendant's rounding policy or practice systematically rounds in Defendant's

favor, and it fails to compensate Defendant's employees for all the time they actually worked in violation of the FLSA.

36. In addition to maintaining a policy or practice whereby Defendant unlawfully rounds production/manufacturing employees' working time down, Defendant requires a deduction of 30 minutes from its production/manufacturing employees' hours worked for a meal break. Defendant applies the meal break deduction or clock-out regardless of whether its production/manufacturing employees are relieved for 30 minutes. However, Named Plaintiff and other similarly situated production/manufacturing employees regularly did not receive bona fide meal periods.

37. Instead, Named Plaintiff and other similarly situated production/manufacturing employees are often not provided 30 minutes for a "meal break" because after clocking out for their meal break, they must first doff their sanitary clothing and equipment before they can begin eating or otherwise enjoying their break. The time doffing the sanitary clothing and equipment significantly reduced the amount of time Named Plaintiff and other similarly situated production/manufacturing employees could take a meal break.

38. Consequently, Named Plaintiff and similarly situated production/manufacturing employees were not completely relieved of substantive work duties for 30 minutes because of the time they continued performing work during their "meal break," including doffing their sanitary clothing and equipment at the start of their "meal break."

39. After this already shortened "meal break," Named Plaintiff and other similarly situated production/manufacturing employees also ended their "meal breaks" early before clocking back in to return to locker rooms to again don their sanitary clothing and equipment, wash their hands, and return to their posts because Defendant required them to fully return from lunch within

30 minutes of the start of the "meal break."

40. Accordingly, Defendant regularly improperly deducted or required a clock-out of 30 minutes from Named Plaintiff's and other similarly situated production/manufacturing employees' daily hours worked, resulting in unpaid overtime.

41. Named Plaintiff and other similarly situated hourly production/manufacturing employees regularly worked more than 40 hours per workweek but were not paid overtime for all overtime hours worked as a result of Defendant's unlawful policies or practices described above.

43. During relevant times, Defendant knew of and acted willfully regarding its conduct described herein. Defendant knew Named Plaintiff and others similarly situated worked overtime without compensation for all overtime hours worked.

44. Defendant is a large and sophisticated employer with dedicated human resources, payroll, and legal functions, and was at all relevant times aware of its obligations under the FLSA, including the obligation to pay non-exempt employees for all hours worked and to pay overtime for hours worked in excess of 40 in a workweek.

45. Defendant designed, implemented, and controlled its payroll systems that applied to Named Plaintiff and other similarly situated hourly production/manufacturing employees.

46. Despite this knowledge of the FLSA's requirements, Defendant adopted and maintained uniform policies or practices of not compensating Named Plaintiff and other similarly situated hourly production/manufacturing employees for their pre and post-shift work and during meal breaks (described above) and did not take reasonable steps to determine whether the policies or practices complied with the FLSA. Defendant's conduct was therefore willful or, at a minimum, was carried out with reckless disregard for whether its pay practices violated those laws.

47. The FLSA requires Defendant to maintain accurate and complete records of employees' time worked and amounts earned and paid. 29 U.S.C. § 211(c); 29 C.F.R. §§ 516.2, 516.5, 516.6, 516.7.

48. For example, federal regulations require employers to make and keep payroll records showing information and data such as the employee's name, occupation, time of day and day of week which the workweek begins, regular hourly rate of pay for any week in which overtime compensation is due, hours worked each workday and total hours worked each workweek, total daily or weekly straight time earnings, total premium pay for overtime hours, total wages paid each pay period, and date of payment and pay period covered by the payment. See 29 C.F.R. § 516.2.

49. Defendant failed to track, maintain, or transmit the hours accurately worked each day by Named Plaintiff and other similarly situated production/manufacturing employees.

50. Defendant willfully transmitted inaccurate and/or incomplete records to payroll for compensation purposes, which do not include all work performed. The incorrect and/or incomplete records had the direct effect of reducing Defendant's labor costs to the detriment of Named Plaintiff and other similarly situated production/manufacturing employees.

51. Thus, Defendant willfully did not record and pay all hours worked in violation of the FLSA and violated the FLSA's recordkeeping requirements.

52. Upon information and belief, Defendant applied these same policies to all its hourly, non-exempt production/manufacturing employees at all its locations.

53. As a result of Defendant's companywide policy and/or practice described herein, Defendant knew or had reason to know that it was not compensating Named Plaintiff and other similarly situated production/manufacturing employees for all overtime hours worked.

54. Defendant is in possession and control of the necessary documents and information from which Named Plaintiff would be able to calculate damages, and/or Defendant otherwise failed to keep such records.

## IV. FLSA COLLECTIVE ACTION ALLEGATIONS

55. Named Plaintiff brings her FLSA claims pursuant to 29 U.S.C. § 216(b) as a representative action on behalf of herself and all other similarly situated production/manufacturing employees of the opt-in collective, consisting of:

> **All of Defendant's current and former hourly production/manufacturing employees who were paid for 40 or more hours of work during a workweek and don and doff sanitary clothing or otherwise perform anti-contamination steps beginning 3 years preceding the filing date of this Complaint and continuing through final disposition of this case (the "FLSA Collective" or the "FLSA Collective Members").**

56. This action is maintainable as an "opt-in" collective action pursuant to 29 U.S.C. § 216(b) as to claims for unpaid overtime compensation, liquidated damages, attorneys' fees, and costs under the FLSA. In addition to Named Plaintiff, numerous current and former production/manufacturing employees are similarly situated with regard to their claims for unpaid wages and damages. Named Plaintiff is representative of the FLSA Collective and is acting on behalf of their interests as well as her own in bringing this action.

57. These similarly situated production/manufacturing employees are known to Defendant and are readily identifiable through Defendant's records. These individuals may readily be notified of this action and allowed to opt in pursuant to 29 U.S.C. § 216(b) for the purpose of collectively adjudicating their claims for unpaid overtime compensation, liquidated damages, attorneys' fees, and costs under the FLSA.

## V. CAUSE OF ACTION

### CAUSE OF ACTION:
### FLSA – COLLECTIVE ACTION FOR UNPAID OVERTIME

58. All of the preceding paragraphs are realleged as if fully rewritten herein.

59. This claim is brought as part of a collective action by Named Plaintiff on behalf of herself and the FLSA Collective.

60. The FLSA requires that employees receive overtime compensation for hours worked in excess of 40 per workweek. 29 U.S.C. § 207(a)(1).

61. During the three years preceding the filing of the initial Complaint, Defendant employed Named Plaintiff and the FLSA Collective Members.

62. Named Plaintiff and the FLSA Collective Members regularly worked in excess of 40 hours in various workweeks.

63. Defendant violated the FLSA with respect to Named Plaintiff and the FLSA Collective by failing to compensate them overtime wages for all overtime hours worked because of Defendant's policies and/or practices described above.

64. Named Plaintiff and the FLSA Collective Members were not exempt from receiving FLSA overtime benefits.

65. Defendant knew or should have known of the overtime payment requirements of the FLSA. Despite such knowledge, Defendant willfully withheld and failed to pay the overtime compensation to which Named Plaintiff and the FLSA Collective Members are entitled.

66. The exact total amount of compensation, including overtime compensation, that Defendant has failed to pay Named Plaintiff and the FLSA Collective Members is unknown at this time, as many of the records necessary to make such precise calculations are in the possession of Defendant or were not kept by Defendant.

67. As a direct and proximate result of Defendant's conduct, Named Plaintiff and the FLSA Collective Members have suffered and continue to suffer damages. Named Plaintiff seeks unpaid overtime and other compensation, liquidated damages, interest and attorneys' fees, and all other remedies available on behalf of herself and the FLSA Collective Members.

## VI. PRAYER FOR RELIEF

**WHEREFORE**, Named Plaintiff requests judgment against Defendant and for an Order:

A. Directing Defendant to provide all relevant policies and procedures regarding timekeeping and compensation, as well as all payroll, remuneration, timekeeping, and related records of the FLSA Collective Members;

B. Directing Defendant to provide all contact information, including but not limited to names, dates of employment, mailing addresses, telephone numbers, and email addresses of the FLSA Collective Members;

C. Directing prompt issuance of notice to the FLSA Collective Members, apprising them of the pendency of this action and permitting them to timely assert their rights under the FLSA and pursuant to 29 U.S.C. § 216(b);

D. Tolling the statute of limitations for all members of the FLSA Collective from the date on which this matter was initially filed until the date on which they file consent to join forms;

E. Finding that Defendant failed to keep accurate records and that, as a result, Named Plaintiff and the FLSA Collective are entitled to prove their hours worked with reasonable estimates;

F. Awarding to Named Plaintiff and the FLSA Collective Members who join this case unpaid overtime wages to be determined at trial together with any liquidated damages allowed by the FLSA;

G. Awarding to Named Plaintiff and the FLSA Collective Members who join this case costs, disbursements, and reasonable allowances for fees of counsel, as well as reimbursement of costs and expenses;

H. Awarding to Named Plaintiff and the FLSA Collective Members who join this case such other and further relief as the Court deems just and proper;

I. Granting Named Plaintiff leave to amend to file additional claims for relief or different causes of action should information become available through investigation and discovery; and

J. Rendering judgment against Defendant for all damages, relief, or any other recovery whatsoever.

**JURY DEMAND**

Named Plaintiff requests a trial by a jury on all triable issues.

Respectfully submitted,

**COFFMAN LEGAL, LLC**

*/s/ Matthew J.P. Coffman*
Matthew J.P. Coffman (0085586)
Shannon M. Draher (0074304)
Adam C. Gedling (0085256)
Tristan T. Akers (0102298)
1550 Old Henderson Rd
Suite #126
Columbus, Ohio 43220
Phone: 614-949-1181
Fax: 614-386-9964
Email: mcoffman@mcoffmanlegal.com
sdraher@mcoffmanlegal.com
agedling@mcoffmanlegal.com
takers@mcoffmanlegal.com

*Attorneys for Named Plaintiff and those similarly situated*